IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

POWELL'S BOOKS, INC., et al.,

        Plaintiffs,

    v.

HARDY MYERS, Attorney General
of the State of Oregon, et al.,

        Defendants.

No. CV 08-501-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiffs—bookstores, non-profit literary, legal, and health organizations, and an

individual (collectively "Powell's Books")[1]—have brought suit challenging the validity of Oregon

Revised Statutes ("ORS") §§ 167.054 ("Section 054") *Furnishing sexually explicit material to a*

*child* and 167.057 ("Section 057") *Luring a minor* (collectively "the Statutes").[2]  They have

brought suit on their own behalf and on behalf of their customers, members, and the population

served by their programs.  They are seeking declaratory and injunctive relief on the basis that the

---

[1] Plaintiffs include: Powell's Books, Inc., Old Multnomah Book Store, Ltd. d/b/a Annie
Bloom's Books, Dark Hose Comics, Inc., Colette's: Good Food + Hungry Minds, L.L.C., Bluejay,
Inc. d/b/a Paulina Springs Books, St. Johns Booksellers, L.L.C., Twenty-Third Avenue Books,
American Booksellers Foundation for Free Expression, Association of American Publishers, Inc.,
Freedom to Read Foundation, Inc., Comic Book Legal Defense Fund, Planned Parenthood of the
Columbia/Willamette, Inc., Cascade AIDS Project, American Civil Liberties Union of Oregon,
Inc., and Candace Morgan, an individual.

[2] Powell's Books is not challenging ORS § 167.057(1)(b)(B), which makes it a crime to
furnish or use a visual representation, verbal description, or narrative account of sexual conduct
for the purpose of "inducing the minor to engage in sexual conduct."  (Pls.' Reply in Supp. of
Perm. Inj. (#45) 10-11.)

PAGE 1 - OPINION AND ORDER

Statutes violate the First and Fourteenth Amendments to the U.S. Constitution because they

criminalize protected speech, and the Fifth and Fourteenth Amendments to the U.S. Constitution

because they are impermissibly vague.  (Pls.' Mem. in Supp. of Perm. Inj. (#37) 1.)  Defendants

include Oregon Attorney General Hardy Myers and the district attorneys of every county in

Oregon (collectively "the State"), all in their official capacities.  The State argues that plaintiffs

are not at risk of prosecution under the Statutes and that the Statutes are constitutional

restrictions on criminal behavior.  (Defs.' Mem. in Opp'n to Perm. Inj. (#44) 2.)

The matter now before the court is Powell's Books's Motion for Permanent Injunction and

Declaration of Unconstitutionality (#36).  I hold that Sections 054 and 057, as interpreted, are not

substantially overbroad and are therefore permissible limitations on speech under the First and

Fourteenth Amendments.  I further hold that neither statute is unconstitutionally vague under the

Fifth and Fourteenth Amendments.  Powell's Books's motion is therefore DENIED.

## BACKGROUND

In 2000 the Oregon Court of Appeals struck down a statute outlawing furnishing minors

with materials that depict "sexual conduct" or "sexual excitement" because the statute was

unconstitutionally overbroad under Article I, section 8, of the Oregon constitution.  *State v.

Maynard*, 5 P.3d 1142 (Or. Ct. App. 2000) (en banc).  Several years later the Oregon legislature

went back to the drawing board to craft statutes aimed at protecting children from the early stages

of sexual abuse, primarily on-line luring and grooming designed to lower children's inhibitions to

engage in sexual conduct at a later date.  (Casper Decl. (#30) Ex. 4 at 5-6 (*Public Hearing on

H.B. 2843 and H.B. 3515 Before the H. Comm. on the Judiciary*, 2007 Leg., 74th Assembly (Or.

April 6, 2007)).)  The Statutes were signed into law on July 31, 2007, as part of House Bill 2843,

PAGE 2 - OPINION AND ORDER

and became effective January 1, 2008.  (Pls.' Mem. in Supp. of Perm. Inj. (#37) 2.)  Section 054

outlaws providing children under thirteen with sexually explicit images.  Or. Rev. Stat. §§

167.051, 167.054.  Section 057 outlaws providing minors under the age of eighteen with visual,

verbal, or narrative descriptions of sexual conduct for the purpose of sexually arousing the minor

or the furnisher, or to induce the minor to engage in sexual conduct.  *Id.* §§ 167.051, 167.057.

Powell's Books has brought suit challenging both Statutes, arguing that they criminalize

protected speech in violation of the First and Fourteenth Amendment and are unconstitutionally

vague in violation of the Fifth and Fourteenth Amendment.[3]  The book stores and trade

associations fear prosecution under the Statutes for offering, distributing, and selling books,

movies, magazines, and other materials that describe and depict sexual conduct.  (Pls.' Mem. in

Supp. of Perm. Inj. (#37) 5.)  Planned Parenthood and Cascade AIDS project fear that they

expose themselves to criminal liability when teaching children and minors safe sexual behavior.

(*Id.*)  Candace Morgan and members of the American Civil Liberties Union ("ACLU") fear

prosecution for giving romance novels or books explaining where babies come from to minors

and children who are friends and relatives.  (*See id.*)  They argue that the materials they provide

to children and minors are protected under the First Amendment, thus, a statute that outlaws the

furnishing of these materials is unconstitutional.  (*Id.* at 1.)  Powell's Books contends that even

those who would not be prosecuted are left in fear of such prosecution because the statutes are

---

[3] The First Amendment and the Fifth Amendment due process clause's vagueness doctrine
are incorporated against the states through the due process clause of the Fourteenth Amendment.
*Gitlow v. New York*, 268 U.S. 652, 666 (1925) (incorporating the First Amendment against the
states); *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999)
(stating that the due process clauses of both the Fifth and Fourteenth Amendments "provide the
constitutional foundation for the void-for-vagueness doctrine").  For simplicity, throughout the
opinion I will refer only to the First and Fifth Amendments.

impermissibly vague.  (*Id.* at 1-2.)  Furthermore, this fear of prosecution is chilling plaintiffs'

protected speech.  (*Id.*)

The State responds that plaintiffs' fears are unfounded.  (Defs.' Mem. in Opp'n to Perm.

Inj. (#44) 10.)  They argue that the Statutes reach only those who furnish the materials to achieve

their "own deviant *sexual* goal."  (*Id.* at 28.)  Such a goal is clearly beyond the behaviors in which

plaintiffs engage.  The State also contends that the Statutes do not violate the First Amendment

because they do not prohibit a substantial amount of protected speech.  (*Id.* at 12-13.)  Finally, as

to vagueness Oregon argues that the behavior the Statutes proscribe is clear in the majority of the

intended applications.  (*Id.* at 32.)

**I.    <u>Section 054</u>**

Section 054 outlaws furnishing sexually explicit materials to children.  Or. Rev. Stat. §

167.054.  "A person commits the crime of furnishing sexually explicit material to a child if the

person intentionally furnishes a child, or intentionally permits a child to view, sexually explicit

material and the person knows that the material is sexually explicit material."  *Id.* § 167.054(1).

A "child" is someone under 13 years of age.  *Id.* § 167.051(1).  "Sexually explicit material" is

> [M]aterial containing visual images of: (a) Human masturbation or sexual
> intercourse; (b) Genital-genital, oral-genital, anal-genital or oral-anal contact,
> whether between persons of the same or opposite sex or between humans and
> animals; or (c) Penetration of the vagina or rectum by any object other than as part
> of a personal hygiene practice.

*Id.* § 167.051(5).

There are two exceptions to liability,

> (a) The person is an employee of a bona fide museum, school, law enforcement
> agency, medical treatment provider or public library, acting within the scope of
> regular employment; or (b) The person furnishes, or permits the viewing of, material

the sexually explicit portions of which form merely an incidental part of an otherwise nonoffending whole and serve some purpose other than titillation.

*Id.* § 167.054(2). It is an affirmative defense that,

the sexually explicit material was furnished, or the viewing was permitted, solely for the purpose of sex education, art education or psychological treatment and was furnished or permitted by the child's parent or legal guardian, by an educator or treatment provider or by another person acting on behalf of the parent, legal guardian, educator or treatment provider.

*Id.* § 167.054(3)(a).

## II.    <u>Section 057</u>

Section 057 outlaws the luring of minors. *Id.* § 167.057. The challenged portion of the statute provides,

A person commits the crime of luring a minor if the person: (a) Furnishes to, or uses with, a minor a visual representation or explicit verbal description or narrative account of sexual conduct; and (b) Furnishes or uses the representation, description or account for the purpose of: (A) Arousing or satisfying the sexual desires of the person or the minor.

*Id.* § 167.057(1). A minor is a person under 18 years of age. *Id.* § 167.051(3). "Sexual conduct" is

(a) Human masturbation or sexual intercourse; (b) Genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals; (c) Penetration of the vagina or rectum by any object other than as part of a medical diagnosis or as part of a personal hygiene practice; or (d) Touching of the genitals, pubic areas or buttocks of the human male or female or of the breasts of the human female.

*Id.* § 167.051(4).

There is one exception to liability, that the "representation, description or account of sexual conduct that forms merely an incidental part of an otherwise nonoffending whole and serves some purpose other than titillation." *Id.* § 167.057(2). It is an affirmative defense that

PAGE 5 - OPINION AND ORDER

"the representation, description or account was furnished or used for the purpose of psychological or medical treatment and was furnished by a treatment provider or by another person acting on behalf of the treatment provider." *Id.* § 167.057(3)(a).

## STANDARDS OF REVIEW

**I.    Injunctive Relief**

"Injunctive relief is appropriate when a party demonstrates '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). When deciding whether injunctive relief is appropriate, a "court must balance the equities between the parties and give due regard to the public interest." *Id.* (quoting *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 833 (9th Cir. 2002)). District courts have "broad latitude" to fashion equitable relief. *Id.* (quoting *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004)).

The Supreme Court has indicated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (discussing the issuance of a preliminary injunction). Courts generally recognize a "significant public interest in upholding First Amendment principles." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002) (collecting cases finding that the public interest weighs in favor of granting preliminary injunctions when First Amendment freedoms are at issue). However, the significant public interest in protecting First Amendment privileges may

be "overcome by a strong showing of other competing public interests, especially where the First Amendment activities of the public are only limited, rather than entirely eliminated." *Id.* (citations omitted).

## II.    Declaratory Relief

A court has discretion to grant declaratory relief when it is in the public interest. *Natural Res. Def. Council v. Envtl. Prot. Agency*, 966 F.2d 1292, 1299 (9th Cir. 1992) (citing 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Civil Procedure* § 2759, at 645 (1983)). Two guiding principles are "whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty and controversy giving rise to the proceedings." *Id.* (citing *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966)).

"[A] request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute." *Zwickler v. Koota*, 389 U.S. 241, 254 (1967). A district court, therefore, has a duty to decide the appropriateness of declaratory relief even if an injunction is not issued. *Id.*

## DISCUSSION

## I.    Facial vs. As-Applied Challenges

The first question that I must answer is what type of challenge plaintiffs are bringing in this case. Powell's Books contends that they have raised both a facial and a pre-enforcement as-applied challenge to the Statutes. (Pls.' Mem. in Supp. of Perm. Inj. (#37) 6.)

### A.    *Difficulty of Separating Facial and As-Applied Challenges*

It is often difficult to define exactly what separates a facial from an as-applied constitutional challenge.  After all, "all challenges to statutes arise when a particular litigant claims that a statute cannot be enforced against her."  Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1324 (2000).  To have Article III standing a plaintiff must allege a particular harm caused by the defendant, a model which lends itself to as-applied challenges.  *Id.* at 1336.  However, "the processes of reasoning necessary to resolve the dispute [] will sometimes . . . yield the conclusion that a statute is invalid, not merely as applied to the facts, but more generally or even in whole."  *Id.* at 1337.

The case of *Marbury v. Madison*, upon which our system of judicial review is founded, is an example of this type of transformation.  *Id.* (citing 5 U.S. (1 Cranch) 137 (1803)).  In that case, the Supreme Court considered only whether the Judiciary Act of 1789 gave it jurisdiction over Marbury's suit, a traditional as-applied challenge.  *Id.*  However, in its holding, the "Court made clear that the challenged provision of the Judiciary Act was invalid not merely as applied to Marbury's suit against Madison, but in all cases insofar as it purported to confer original . . . jurisdiction not contemplated by Article III."  *Id.*  And this result is not unusual.  It is often the case that "in ruling on an as-applied challenge, a court [will] incidentally reach[] a conclusion that a statute is more broadly invalid."  *Id.*

### B.    *Powell's Books Makes Only a Facial Challenge*

Despite the fact that facial challenges to statutes are not unusual, they are generally disfavored because they require courts to "resolve questions of constitutionality with respect to each potential situation that might develop."  *Gonzales v. Carhart*, 127 S. Ct. 1610, 1639 (2007)

(determining that as-applied attacks to Partial Birth Abortion Ban Act of 2003 were more appropriate than the proposed facial challenge).  The existence of a First Amendment claim does not "render inapplicable the rule that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985).

In *American Booksellers Foundation v. Dean*, the Second Circuit interpreted this preference for declarations of partial rather than facial invalidity to require the court to determine whether the statute at issue could constitutionally be applied to the particular speech upon which plaintiffs had based their suit.  *See* 342 F.3d 96, 105 (2d Cir. 2003) (declaring that a determination of substantial overbreadth was unnecessary).  In that case, operators of internet websites sued the Governor of Vermont challenging the constitutionality of a statute prohibiting the transfer to minors of sexually explicit material "harmful to minors." *Id.* at 98-99.  Specifically, plaintiffs argued that the statute impermissibly burdened internet communications regarding sex because online age-verification services required visitors to forgo anonymity, thus deterring some adults from visiting the sites.  *Id.* at 99.  The court found that an "as-applied" challenge was appropriate because "the speech at issue [was] discrete, [and] it [was] feasible to consider only the internet speech upon which plaintiffs based their suit." *Id.* at 105.

However, the court noted that in some cases, an as-applied challenge is impracticable because of the "vast array of plaintiffs, the range of their expressive activities, and the vagueness of the statute." *Id.* (quoting *Reno v. ACLU*, 521 U.S. 844, 883-84 (1997) (finding that an as-

applied challenge to the Communications Decency Act of 1996 was not only not authorized by statute, but impracticable for the listed reasons)).[4]

While an as-applied challenge theoretically could exist in this case, Powell's Books has not brought it.  Powell's Books has not based its challenge on a single book, pamphlet, or even a carefully defined genre against which to measure the Statutes.  The books sold vary between stores and change over time at each individual store.  The sex education materials provided by Planned Parenthood and Cascade AIDS Project bear little relation to the romance novels sold at Powell's Books.  The variety of plaintiffs and the different types of speech in which they engage requires a facial approach.

It is worth noting, however, this is not the usual type of First Amendment facial challenge.  Generally, such challenges are brought by a plaintiff whose own speech or conduct may be prohibited or limited under the First Amendment.  When this type of plaintiff brings suit, he argues that the statute threatens others not before the court whose speech is protected, necessitating that the overbroad statute be stricken on its face.  *See Spokane Arcades*, 472 U.S. at 503.  The State typically contends the challenged statute lawfully prohibits the plaintiff's speech and does not reach substantially further.  In the present case, Powell's Books is arguing that its own speech and that of the other plaintiffs is protected under the First Amendment, while the State contends the Statutes do not prohibit any of plaintiffs' speech.  This inversion of the parties' positions makes this a fairly unusual facial First Amendment challenge.

_____

[4] In *Reno*, plaintiffs included forty-seven companies and non-profit organizations, including the ACLU, Planned Parenthood, America Online, Inc., and Microsoft Corporation.  *See Reno*, 521 U.S. at 861 n.27, n.28.

PAGE 10 - OPINION AND ORDER

II.    **Standing**

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,'

and an Article III federal court therefore lacks subject matter jurisdiction over the suit."

*Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 101 (1998)).  Generally, to establish constitutional standing, "a

plaintiff 'must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized

and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision.'"[5]  *Id.* (quoting *Friends of the Earth, Inc. v.*

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).  To meet the threshold for an

injury in fact in a pre-enforcement facial First Amendment claim, plaintiffs must demonstrate "an

actual and well-founded fear that the law will be enforced against them."  *Virginia v. Am.*

*Booksellers Ass'n*, 484 U.S. 383, 393 (1988).

In *Virginia v. American Booksellers*, plaintiffs—organizations with bookseller members,

Virginia bookstores, and a Virginia adult and her juvenile child—brought suit challenging a

Virginia statute making it a crime "to knowingly display for commercial purpose in a manner

whereby juveniles may examine and peruse" materials that are "harmful to juveniles."  *Id.* at 387-

88.  The Supreme Court held that the plaintiffs had standing because, "if their interpretation of

the statute is correct, [they] will have to take significant and costly compliance measures or risk

---

[5] The causation and redressability prongs of the standing doctrine have not been
challenged in this case because they flow directly from the injury in fact, i.e., if Powell's Books is
injured in fact, that injury comes from the Statute (or Statutes) and a finding that the Statute (or
Statutes) is unconstitutional will redress the injury.

criminal prosecution." *Id.* at 392 (citing *Craig v. Boren*, 429 U.S. 190, 194 (1976)).  The Court further noted that plaintiffs could allege infringement not only of their own First Amendment rights, but also those of book buyers.  To ensure First Amendment freedoms are protected, litigants can challenge a statute whose "existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 392-93 (quoting *Sec. of State of Md. v. J.H. Munson Co.*, 467 U.S. 947, 956 (1984)).

The State argues that Powell's Books does not have standing to challenge the Statutes because the statutes apply "only to those who furnish explicit, sexually arousing [sic] to minors or young children," and Powell's Books does not allege facts that give rise to a credible threat of prosecution.  (Defs.' Mem. in Opp'n to Perm. Inj. (#44) 10.)  Powell's Books argues that under their interpretation of the Statutes they have an "actual and well-founded fear" of prosecution. (Pls.' Reply in Supp. of Perm. Inj. (#45) 4.)

Powell's Books has standing.  Standing for a First Amendment challenge exists when a reasonable reading of the disputed statute puts plaintiffs in fear of prosecution. *See Virginia v. Am. Booksellers*, 484 U.S. at 392 (citing *Craig*, 429 U.S. at 194).  Powell's Books's reading—that materials they sell or distribute fall within the reach of the Statutes—is reasonable.  Under Powell's Books's broad reading, the Statutes would outlaw the furnishing of romance novels or the *Joy of Sex* to teens and graphic novels to eleven-year-olds.  Because plaintiffs regularly sell or give away materials arguably covered by the Statutes they have standing.

**III.**    **Substantial Overbreadth Analysis**

    **A.**    ***The Substantial Overbreadth Standard***

    The Supreme Court has recognized the overbreadth doctrine in the limited context of

First Amendment facial challenges.  *See Schall v. Martin*, 467 U.S. 253, 268 n.18 (1984) (stating

that "outside the limited First Amendment context, a criminal statute may not be attacked as

overbroad" (citing *New York v. Ferber*, 458 U.S. 747 (1982))).  This doctrine recognizes that

"when overly broad statutory language seems to sweep protected First Amendment expression

directly into the scope of a regulation affecting speech, or indirectly places an undue burden on

such protected activity, free expression can be chilled even in the absence of the statute's specific

application to protected speech."  *Am. Booksellers v. Webb*, 919 F.2d 1493, 1499 (11th Cir.

1990).

    The overbreadth analysis has three steps.  First, a court must construe a statute's reach;

that is, determine exactly what speech or conduct is covered.  *United States v. Williams*, 128

S.Ct. 1830, 1838 (2008).  Second, the court must determine whether the statute "criminalizes a

substantial amount of protected expressive activity."  *Id.* at 1841.  Third, the court must

determine whether the statute is "readily susceptible" to a limiting construction that would make

it constitutional.  *See Virginia v. Am. Booksellers*, 484 U.S. at 397 (citing *Erznoznik v. City of

Jacksonville*, 422 U.S. 205, 216 (1975)).

        **1.**    **The Reach of the Statutes: Oregon Statutory Construction**

    The parties agree that the Oregon principles of statutory interpretation governing this case

are primarily laid out in *Portland General Electric Co. v. Bureau of Labor & Industries*, 859

P.2d 1143 (Or. 1993) ("*PGE*").  (Pls.' Mem. in Supp. of Perm. Inj. (#37) 19-20.)  (Defs.' Mem. in

Opp. to Perm. Inj. (#44) 16.)  In *PGE*, the Oregon Supreme Court stated that, "[i]n interpreting a statute, the court's task is to discern the intent of the legislature."  859 P.2d at 1145.  At the first level of analysis, a court should consider the text and context of the statutory provision at issue. *Id.* at 1146.  A statute's context includes related statutory provisions, "as well as relevant judicial constructions of those statutes." *Filipetti v. Dep't of Fish & Wildlife*, 2008 WL 5000525, at *3 (Or. Ct. App. Nov. 26, 2008) (citing *PGE*, 859 P.2d at 1146; *State v. Thompson*, 998 P.2d 762, 766 (Or. Ct. App. 2000)).  "If, but only if, the intent of the legislature is not clear from the text and context inquiry, the court will then move to the second level, which is to consider legislative history." *PGE*, 859 P.2d at 1146.  Finally, if the intent of the legislature remains unclear, the court may "resort to general maxims of statutory construction." *Id.*  "The threshold of ambiguity is a low one.  It does not require that competing constructions be equally tenable.  It requires only that a competing construction not be wholly implausible." *State v. Mayes*, 186 P.3d 293, 296-97 (Or. Ct. App. 2008) (quoting *Godfrey v. Fred Meyer Stores*, 124 P.3d 621, 628 (Or. Ct. App. 2005)) (internal quotation marks omitted).

The requirement that I look at the text and context of the Statutes at the first level of analysis contrasts sharply with textual exegesis in federal law.  "The preeminent canon of [federal] statutory interpretation requires [a court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).  Therefore, a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)).  By contrast,

Oregon law requires that a court look broadly at both the text and context of a statute to determine the legislature's intent.

### 2.    Whether the Statutes Criminalize Substantial Protected Activity

A statute is facially invalid if it "prohibits a substantial amount of protected speech." *Williams*, 128 S.Ct. at 1838.  Because there are competing interests at stake—(1) the threat that an overbroad law will chill constitutionally protected speech and (2) the state's interest in protecting the public from criminal conduct—courts require that "a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* (citing *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989)).

The requirement of "substantial" overbreadth first appeared with regard to laws aimed primarily at conduct, rather than at pure speech.  *See Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973) (stating that the purpose of the overbreadth rule "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct").  However, more recently it has been applied across the board in First Amendment cases.  *See Spokane Arcades*, 472 U.S. at 503 n.12 (explaining that *Ferber*, 458 U.S. at 772, holds that the substantial overbreadth requirement is applicable where pure speech is at issue).  This expansion of the test demonstrates the fundamental concerns many courts have when asked to invalidate statutes for overbreadth.  *See Williams*, 128 S. Ct. at 1838 ("Invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" (quoting *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999))).

a)      Scope of Protected Expression

The First Amendment provides that "Congress shall make no law . . . abridging the

freedom of speech."  U.S. Const. amend. I.  Despite the rather absolute language of the

Amendment "[t]here are certain well-defined and narrowly limited classes of speech, the

prevention and punishment of which has never been thought to raise any Constitutional

problem."  *Chaplinksy v. New Hampshire*, 315 U.S. 568, 571-72 (1942).  One of these classes of

speech is obscenity.  *Miller v. California*, 413 U.S. 15, 23 (1973).

However, because of the dangers of regulating any form of expression, state statutes

regulating obscenity must be carefully limited.  *Id.* at 23-24.  In *Miller*, the Supreme Court

created a test to determine whether material was obscene.  In combination with the earlier case of

*Ginsberg v. New York*, 390 U.S. 629 (1968), defining obscenity as to minors, *Miller* is the

definitive test for obscenity as to minors.  There are three prongs: (1) whether the average person,

applying contemporary community standards would find that the work, taken as a whole, appeals

to the prurient interest of minors/children;[6] (2) whether the work depicts or describes sexual

conduct that is patently offensive to prevailing standards in the adult community as a whole with

respect to what is suitable for minors/children; and (3) whether the work, taken as a whole, lacks

─────────────────

[6] The *Miller* court did not define "prurient interest."  However, a footnote states, "the
words 'obscene material,' as used in this case, have a specific judicial meaning which derives
from the *Roth* case, i.e., obscene material 'which deals with sex.'"  *Miller*, 413 U.S. at 18 n.2
(citing *Roth v. United States*, 354 U.S. 476, 488 n.20 (1957); Model Penal Code § 251.4(l)
(Official Draft 1962)).  Model Penal Code section 251.4(1) states, "Material is obscene if,
considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid
interest, in nudity, sex or excretion, and if in addition it goes substantially beyond customary
limits of candor in describing or representing such matters."  The Ninth Circuit has said, "the
'prurient interest' portion of the obscenity test is not satisfied if the jury merely finds that the
materials would arouse normal sexual responses."  *Ripplinger v. Collins*, 868 F.2d 1043, 1054
(9th Cir. 1989) (citing *Brockett*, 472 U.S. at 498-99).

PAGE 16 - OPINION AND ORDER

serious literary, artistic, political, or scientific value, as to minors/children. *See Am. Booksellers v. Webb*, 919 F.2d at 1503 n.18 (citing *Miller*, 413 U.S. at 24; *Ginsberg*, 390 U.S. at 633) (discussing effect of *Miller* on the *Ginsberg* test defining obscenity as to minors).

### b)    The Standard the Statutes Must Achieve

If the Statutes were required to meet the precise terms of the *Miller/Ginsberg* test they would certainly fail.  But, a statute need not parrot the three-part *Miller/Ginsberg* test to survive First Amendment scrutiny.  *Miller*, 413 U.S. at 25 ("[I]t is not our function to propose regulatory schemes for the States.  That must await their concrete legislative efforts.").  Thus, a statute that functionally distinguishes between obscene and non-obscene speech, as defined by *Miller/Ginsberg*, would survive a claim of unconstitutionality, even if it does not contain the familiar three-part test.[7]

Neither Section 054 nor Section 057 explicitly requires that the outlawed materials be patently offensive or appeal to the prurient interest.  The Statutes do not necessitate that a judge or jury consider local community standards in evaluating the materials.  And certainly there is no protection for materials that have serious literary, artistic, political, or scientific value.  But that is not the end of the inquiry.  Instead, I must apply a more functional test; I must determine whether the Statutes, as they would be applied by prosecutors, judges, and juries, are substantially overbroad.  *Cf. Williams*, 128 S.Ct. at 1846 (stating that a statute was not vague, in part because the Circuit's Court's hypotheticals would not "enable a reasonable juror" to convict under the

_____

[7] There is another reason for considering a functional equivalence approach in this case. Without it, Oregon is left in the Catch-22 position of being unable to enact an obscenity statute that survives both *Miller* and *State v. Henry*, 732 P.2d 9, 17 (1987) (stating that "[a]lthough the *Miller* test may pass federal constitutional muster . . . the test constitutes censorship forbidden by the Oregon Constitution").

PAGE 17 - OPINION AND ORDER

statute and that therefore the "prosecutions would be thrown out at the threshold").  Thus, the

essential question with regard to Sections 054 and 057 is whether they outlaw speech

substantially beyond the permissible bounds of *Miller/Ginsberg*.[8]

### 3.    Whether the Statutes are Readily Susceptible to a Limiting Construction

The existence of a First Amendment claim does not "render inapplicable the rule that a

federal court should not extend its invalidation of a statute further than necessary to dispose of

the case before it."  *Spokane Arcades*, 472 U.S. at 502 (citing *Buckley v. Valeo*, 424 U.S. 1

(1976)).  "[W]here the parties challenging the statute are those who desire to engage in protected

speech that the overbroad statute purports to punish" a finding of partial invalidity is appropriate,

if a limiting construction is possible.  *Id.* at 504.  However, a court may not add a new term to the

___

[8] Powell's Books states that it is unclear whether the language "[a] person is not liable to prosecution for violating [the statute] if," creates an affirmative defense or an element of the crime.  (Pls.' Mem. in Supp. of Perm. Inj. (#37) 16 (quoting Or. Rev. Stat. §§ 167.054(2); 167.057(2)).)  They argue that if the language creates a defense, both Statutes are unconstitutional.  (*Id.*)  Powell's Books further argues that sections 167.054(3)(a) and 167.057(3)(a), which are explicitly labeled as affirmative defenses, are unconstitutional because they shift the burden to the defendant to prove he or she is not guilty of a crime.  (*Id.* at 17.)

Due process requires that the government prove every element of a crime beyond a reasonable doubt.  *United States v. Solorzano-Rivera*, 368 F.3d 1073, 1079 (9th Cir. 2004) (quoting *United States v. Hernandez-Franco*, 189 F.3d 1151, 1157-58 (9th Cir. 1999)).  Therefore, "[i]f a[n affirmative] defense negates an element of the crime, rather than mitigates culpability once guilt is proven, it is unconstitutional to put the burden of proof on the defendant."  *Id.*  The portions of the Statutes challenged by Powell's Books afford excuses for liability for the crimes defined earlier in the Statutes.  Thus, there is no violation of due process, even if all the challenged sections are affirmative defenses.

Ultimately, it is not relevant to the *Miller/Ginsberg* issues in this case whether the portions of the Statutes identified by Powell's Books are affirmative defenses or elements of the crime to be proven by the state.  I am asked to determine whether the functional effect of Sections 054 and 057 is to outlaw a substantial amount of protected speech.  Affirmative defenses will alter the functional effect of the Statutes, thus they are included in my substantial overbreadth analysis.

PAGE 18 - OPINION AND ORDER

statute. *See, e.g.*, *Foti v. City of Menlo Park*, 146 F.3d 629, 639 (9th Cir. 1998) (refusing to insert the phrase "temporary signs" to limit the reach of an ordinance prohibiting signs on parked vehicles). Nor may a court narrow a statute without any direction from the legislature as to how it should be limited. *See Reno*, 521 U.S. at 884.

      **B.**    ***Section 054***

          **1.**    **Reach of the Statute**

             **a)**    ***PGE*: First Level of Analysis**

Section 054 makes it a crime to intentionally furnish visual images a person knows to be sexually explicit to a child. Or. Rev. Stat. § 167.054(1). Employees of museums, schools, law enforcement agencies, medical treatment providers, and public libraries are exempt from prosecution when acting within the scope of employment. *Id.* § 167.054(2)(a). Materials that are furnished for the purpose of sex or art education or for psychological treatment are exempt as long as a parent, legal guardian, educator, or treatment provider permits it. *Id.* § 167.054(3)(a). Finally those who are less than three years older than the child or have reasonable cause to believe the victim was not a child, escape liability. *Id.* § 167.054(3)(b)-(c).

The final exception to liability exempts a defendant who furnishes material "the sexually explicit portions of which form merely an incidental part of an otherwise nonoffending whole and serve some purpose other than titillation." *Id.* § 167.054(2)(b). The scope of this exception is not readily ascertainable from the text alone. First, the relative size or importance of an incidental part and the existence of a non-offending whole are difficult to determine without more information. Second, the identity of the person whose "purpose" is relevant to the exception is unclear. Third, the phrase "some purpose other than" is ambiguous, it is unclear

PAGE 19 - OPINION AND ORDER

whether the Statutes require that the only purpose be something other than titillation, or whether titillation may be one of several purposes.

Nor are these ambiguities resolved by looking at the context of Section 054. In context, Section 054 is "part of a broader statutory framework that addresses the protection of children from exposure to obscene material." *Maynard*, 5 P.3d at 1146 (discussing the context of ORS § 167.065(1), which has since been repealed). While this framework aids in determining that the general goal of the Section 054 is to protect children it does not clarify the meaning of the phrase discussed above.

A related statute, ORS § 167.085, which contains defenses to prosecution under two obscenity statutes not challenged in this case, is more helpful. One of the defenses provided in ORS § 167.085 is practically identical to the ambiguous defense discussed above: "That the defendant was charged with furnishing, showing, exhibiting or displaying an item, those portions of which might otherwise be contraband forming merely an incidental part of an otherwise nonoffending whole, and serving some purpose therein other than titillation." Or. Rev. Stat. § 167.085(3). The Oregon Court of Appeals's analysis of this statute is therefore instructive of how Section 054 should be interpreted.

In attempting to determine the purpose of another obscenity statute, the Oregon Court of Appeals examined the meaning and purpose of the affirmative defense found in ORS § 167.085(3). *Maynard*, 5 P.3d at 1147-48. The court first determined that "titillation logically refers to sexual excitement or arousal." *Id.* at 1147. Finding that it was nonsensical to shield a defendant from liability merely because he did not primarily intend to titillate himself, the court determined that "the defense applies to those materials not primarily intended to titillate the

PAGE 20 - OPINION AND ORDER

victim." *Id.*  In light of this defense, the court found that the purpose of the related statute was "to protect children from the effects of hardcore pornography." *Id.* at 1148.

The State argues that *Maynard* contains the authoritative construction of the defense at issue here.  (Defs.' Mem. in Opp'n to Perm. Inj. (#44) 16.)  Thus, Section 054 exempts from liability materials that are not "'primarily intended' to 'sexually arouse' the child to whom they are furnished."  (*Id.* at 15.)  Powell's Books counters that the analysis in *Maynard* focused on "whether the minor's or the furnisher's titillation was the prohibited harmful effect against which the statute was directed."  (Pls.' Mem. in Supp. of Perm. Inj. (#37) 17.)  Under this reading, *Maynard* gives no explanation of "whether material with purposes in addition to titillation violates Section[] . . . 054."  (*Id.* at 19.)

Powell's Books also argues that the State's interpretation—that titillation be the defendant's primary purpose—robs Section 054 of its separate meaning from Section 057.  (*Id.* at 21.)  If Section 054 was limited to the furnishing of material "primarily intended to sexually arouse" the child, it would be coextensive with Section 057(1)(b)(A) which bans the furnishing of sexual representations that are meant to "[a]rous[e] or satisfy[] the sexual desires of . . . the minor."  (Pls.' Reply in Supp. of Perm. Inj. (#45) 7.)  Thus, Powell's Books argues that using the *Maynard* definition violates the Oregon rule of statutory construction that "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."  (*Id.* (quoting *PGE*, 859 P.2d at 1146).)

I conclude *Maynard* and the related context do not provide enough certainty about the reach of Section 054 so as to end the analysis at the first level of *PGE*.  I will therefore continue to the second level of analysis under *PGE*, the legislative history.

PAGE 21 - OPINION AND ORDER

b)    *PGE*: Second Level of Analysis

The Oregon legislature passed Sections 054 and 057, at least in part, in response to the *Maynard* decision, which struck down an obscenity statute as unconstitutionally overbroad under Article I, section 8, of the Oregon constitution.  (Casper Decl. (#30) Ex. 5 at 4-5 (*Public Hearing on H.B. 2843 Before the H. Comm. on Ways & Means Public Safety Subcomm.*, 2007 Leg., 74th Assembly (Or. June 15, 2007)).)  The Statutes were an attempt to take the guidance from the Oregon Court of Appeals and ensure that the new statutes complied with the Oregon constitution.[9]  (*Id.* at 5.)

More generally, the Statutes are an attempt to fill a "gap" in the existing law targeting the sexual abuse of children.  (Casper Decl. (#30) Ex. 4 at 7.)  Prosecutors were concerned that early "grooming" behaviors such as showing pornography to children were going unpunished.  (*Id.*)  Oregon Senator Kate Brown indicated that the legislature's objective in passing the Statutes was "to prevent child sexual abuse and predatory child sexual exploitation."  (*Id.* at 3.)  Representative Andy Olson further indicated that the Statutes were aimed at "really hardcore" pornography.  (Casper Decl. (#30) Ex. 5 at 1.)

---

[9] It appears that at least some members of the legislature understood that the Oregon constitution provides broader protections than those provided by the First Amendment.  (*Id.* at 9)  Thus, they believed that because the Statutes appeared to follow the guidance offered by *Maynard* that they would survive federal constitutional scrutiny.  This fails to take into account that an analysis under Article 1, section 8, is completely different than an analysis under the First Amendment.  Determining that a statute survives one method of analysis does not mean that it will survive the other.

From this history it is clear that the Oregon legislature was aware of *Maynard* and wished to follow its guidance.  Thus, I will utilize the *Maynard* definition of the defense.[10]  The language "form(s) merely an incidental part of an otherwise nonoffending whole and serve(s) some purpose other than titillation," will be interpreted as protecting from prosecution the furnishing of materials "not primarily intended to titillate the victim."  *Maynard*, 5 P.3d at 1147 (internal quotation marks omitted).  Representative's Olson's statement indicates that the material's purpose is relevant to this question, because the goal of the statute was to stop child abusers from sharing "really hardcore" pornography with children.[11]  Therefore, in combination with *Maynard*'s analysis, I interpret the exception to require that the *primary* purpose of the furnished material be to sexually arouse the viewer.  Thus, a person is not liable for prosecution under Section 054 if the material furnished is not "primarily intended to sexually arouse" the minor.

---

[10] I am not concerned that by doing so I am making Section 054 coextensive with Section 057, as Powell's Books warns.  First, the Statutes are sufficiently distinct.  Section 054 applies only to children and visual representations of sexual conduct, and contains a scienter requirement absent from Section 057 (the furnisher must know that the materials provided are sexually explicit).  *See* Or. Rev. Stat. § 167.054(1).  Second, the *Maynard* reading requires the primary purpose of the material to be arousal of the viewer whereas the portion of Section 057 criminalizing the furnishing of sexual representations meant to arouse the sexual desires of the minor refers to the purpose or goal of the furnisher, not of the material.  *See infra* Part III.C.1.

[11] The legislature's goal to reach hardcore pornography cannot be used to limit the reach of the Statutes in ways that do not conform with the text of the Statutes themselves.  For example, "sexually explicit material" includes materials containing visual images of sexual intercourse.  Or. Rev. Stat. § 167.051(5).  Materials other than hardcore pornography, materials protected under the First Amendment, may contain visual images of sexual intercourse.  If too many such materials are outlawed by the Statutes, they will be overbroad, despite the legislature's intent.

PAGE 23 - OPINION AND ORDER

### 2.    Substantial Overbreadth

A close look at the reach of Section 054 demonstrates that the statute is not substantially overbroad.  The argument truly begins and ends with one fact: Powell's Books has not named, either in the briefing or during oral argument, any materials that are protected under *Miller/Ginsberg* and criminalized under Section 054.  The closest they come is stating that mainstream films with sex scenes and graphic novels might be in violation of the statute.  (Pls.' Mem. in Supp. of Perm. Inj. (#37) 22-23.)  They did provide a list of books with pictures in a declaration.[12]  Based on the information provided, the *Kama Sutra*, the *Joy of Sex*, *Black Hole*, *Tanpenshu-Volume 2*, *How Sex Works*, *It's Perfectly Normal*, *Where Did I Come From?*, *Mommy Laid an Egg*, and possibly Cascade AIDS Project or Planned Parenthood pamphlets might be restricted.  (*See* Supp. Finan Decl. (#43) Attach. B.)

However, plaintiffs' furnishing of most of these materials would escape liability under one of the affirmative defenses or due to the scienter requirement.  First, plaintiffs need not be concerned about liability for selling book whose contents are unknown to them.  *See* Or. Rev. Stat. § 167.054(1) (requiring that the defendant know the material to be sexually explicit).  Second, although it is possible that books such as *How Sex Works*, *Where Did I Come From*, and *Mommy Laid an Egg*, could conceivably sexually arouse a child, that is certainly not their primary purpose.  Thus, the furnishing of similar sex information and education books is not criminalized by Section 054.  Third, staff and volunteers at Planned Parenthood and Cascade AIDS Project escape liability both because the materials they hand out are not primarily intended

---

[12] Only materials with pictures/images are regulated by Section 054.  *See* Or. Rev. Stat. § 167.051(5).

to sexually arouse the reader and because they are generally furnishing the works for sex

education purposes on behalf of treatment providers.  I am hard pressed to imagine a situation in

which one of the plaintiffs would be liable under Section 054.

Powell's Books has not demonstrated that Section 054 covers a substantial amount of the

protected expression engaged in by plaintiffs.  Therefore, despite the fact that Section 054 does

not conform to the *Miller/Ginsberg* formulation, the statute is constitutional.

C.    *Section 057*

1.    **Reach of the Statute**

a)    *PGE*: **First Level of Analysis**

The challenged portion of Section 057 makes it a crime to furnish or use with a minor a

visual representation, verbal description, or narrative account of sexual conduct "for the

purpose[] of arousing or satisfying the sexual desires of the person or the minor."  Or. Rev. Stat.

§ 167.057(1).  It is an affirmative defense that the material was furnished by a treatment provider

for the purpose of psychological or medical treatment.  *Id.* § 167.057(3)(a).  As with Section 054,

those who are less than three years older than the child or have reasonable cause to believe the

victim was not a child, escape liability.  *Id.* § 167.057(3)(b)-(c).

Section 057 contains an exception to liability practically identical to that analyzed

extensively above with regard to Section 054.  *Compare id.* § 167.057(2) *with id.* §

167.054(2)(b).  I adopt my analysis conducted above for Section 057.  Thus, a person is not liable

under Section 057 if the furnished material itself is not "primarily intended to sexually arouse."

Another ambiguity exists in Section 057 regarding the meaning of a clause found in

Section 057 but not in Section 054: the furnishing must be "for the purpose[] of arousing or

satisfying the sexual desires of the person or the minor." *Id.* § 167.057(1)(b). The text does not make clear whether knowledge of the contents of a book or pamphlet would be sufficient to demonstrate "purpose" on the part of a criminal defendant, or whether something more than knowledge is required. *PGE* tells us that "words of common usage typically should be given their plain, natural, and ordinary meaning." *PGE*, 859 P.2d at 1146 (citing *State v. Langley*, 839 P.2d 692, 698 (Or. 1992); *Perez v. State Farm Mut. Ins. Co.*, 613 P.2d 32, 34 (Or. 1980)). The primary definition of the noun "purpose" is, "That which one sets before himself as an object to be attained; the end or aim to be kept in view in any plan, measure, exertion, or operation; design; intention." *Webster's New Int'l Dictionary* 2018 (2d ed. 1954). Using this definition, Section 057 requires more than mere knowledge. A defendant must have a plan or goal to arouse either himself or the victim, which therefore would not reach typical commercial transactions by these plaintiffs.

The State asks the court to go further and hold that the context of the statute demonstrates that the prohibition on using materials describing or depicting sexual conduct with the purpose of arousing a minor applies only when the person furnishing the materials does so to achieve his own deviant sexual goal.[13] (Defs.' Mem. in Opp. to Perm. Inj. (#44) 28.) In other words, the defendant must have not only a goal to arouse either himself or the victim, he must have the deviant sexual goal of grooming the victim for sexual abuse. First, the statute makes it a crime to "lure" a minor, which is to "draw into danger, evil, or difficulty by ruse or wiles." (*Id.* at 28 (quoting *Webster's 3d New Int'l Dictionary* 1347 (unabridged ed. 2002)).) Second, Section

---

[13]The State argues that this law distinguishes between actions taken "because of" a given end from actions taken "in spite of" their unintended but foreseen consequences. (Defs.' Mem. in Opp. to Perm. Inj. (#44) 29 (citing *Vacco v. Quill*, 521 U.S. 793, 803 (1997)).)

057(1)(b)(B) makes it a crime to furnish explicit materials for the purpose of inducing a minor to have sex. (*Id.*) Third, the statute has affirmative defenses that relieve people from liability if they have a non-sexual purpose. (*Id.*) Fourth, the language "for the purpose of arousing or satisfying the sexual desires of the person or the minor" is nearly identical to language the legislature has used to define the kind of physical contact that constitutes a sexual offense.[14] (*Id.* at 28-29.)

This is a plausible reading of the text and context of Section 057, leading to the second level of analysis under *PGE*, the legislative history. *Godfrey*, 124 P.3d at 628.

### b)     *PGE*: Second Level of Analysis

The State has consistently argued, and Powell's Books does not challenge, that the Oregon legislature's "explicit intent was to protect children from sexual exploitation and abuse, and specifically to address the problem of grooming children for later sexual abuse." (Defs.' Mem. in Opp. to Perm. Inj. (#44) 29.) The intent to outlaw grooming behaviors, coupled with the definition of "luring" identified by the State and the fact that the unchallenged portion of Section 057 makes it a crime to furnish explicit materials for the purpose of inducing a minor to have sex, itself a deviant sexual goal, weigh in favor of my adopting the State's interpretation of "purpose."

However, there is contrary evidence both in the legislative history and in the phrasing of Section 057 itself. A prosecutor from the Marion County District Attorney's Office testified before the House Committee on Judiciary in support of the Statutes. She indicated that the goal of the Statutes was to stop abusers from furnishing sexual materials to minors both "as an

---

[14] This language is in the part of the statute not challenged by Powell's Books.

instrument of the abuse" and as an attempt "to groom [the minor] for later sexual abuse."
(Casper Decl. (#30) Ex. 4 at 6.)  As discussed above, the Statutes are an attempt to fill a "gap" in
the existing law targeting the sexual abuse of children.  (*Id.* at 7.)  Prosecutors were concerned
that "grooming" behaviors were going unpunished because it is too difficult to prove beyond a
reasonable doubt that showing pornography to a minor is an attempt to commit sexual abuse.
(*Id.*)  According to the witness, the principal difficulty lay in proving the defendant's mental
state; proving the defendant provided the materials to the victim as a way to groom or desensitize
the minor for future abuse or simply to stimulate the defendant himself.  (*Id.*)  Thus, the
legislature was attempting to create a *lower* standard of proof with the Statutes; attempting to
avoid having to prove the defendant's deviant sexual purpose beyond a reasonable doubt.

Furthermore, if I were to adopt the State's interpretation of Section 057, it would conflate
two portions of the statute.  Section 057 already outlaws furnishing a minor with materials
depicting sexual conduct with the goal of "inducing the minor to engage in sexual conduct."  Or.
Rev. Stat. § 167.057(1)(b)(B).  If I were to read the word "purpose" to require the same deviant
sexual goal, then this section of the statute would be surplusage.  Oregon courts instruct that
"where there are several provisions or particulars such construction is, if possible, to be adopted
as will give effect to all."  *PGE*, 859 P.2d at 1146.  I therefore hold that "purpose" is defined
simply by its dictionary definition, "an object to be attained; the end or aim to be kept in view in
any plan, measure, exertion, or operation; design; intention."  *Webster's New Int'l Dictionary*
2018 (2d ed. 1954).  I decline to further narrow the definition to include only a deviant sexual
purpose because doing so would render a portion of Section 057 superfluous, in violation of the
Oregon rules of statutory construction.

PAGE 28 - OPINION AND ORDER

### 2.    Substantial Overbreadth

Section 057 covers both narrative accounts and visual depictions, therefore it has a much broader scope than Section 054.  The statute's definition of the materials furnished appears to encompass romance novels, books like *The Joy of Sex* and the *Kama Sutra*, and other explicit but not obscene materials, written or created to arouse the reader/viewer.  Powell's Books specifically argues that the sale of graphic novels like *Lady Snowblood*, mainstream films like *Thelma & Louise* and *Titanic*, sex education books and pamphlets, and novels like *The Handmaid's Tale*, *Snow Falling on Cedars*, *The Color Purple*, *Ricochet River*, and *Slaughterhouse Five*, could all be criminalized under the statute.  (Pls.' Mem. in Supp. of Perm. Inj. (#37) 21-22.)

Unlike Section 054, employees of museums, libraries, schools, and law enforcement agencies are not exempt from liability under Section 057.  In fact, there is no exception for sex education at all, although there is an exception for psychological and medical treatment.  Those who work at Planned Parenthood or Cascade AIDS Project are likely protected because their work is almost always going to be on behalf of a medical treatment provider.  *See* Or. Rev. Stat. § 167.057(3)(a) (exempting furnishing depictions of sexual conduct for purpose of psychological and medical treatment).  Others who furnish sex education materials are protected if the material is not "primarily intended to sexually arouse" the minor.  And anyone furnishing any material covered by the statute is not at risk unless the furnisher's purpose is to arouse the sexual desires of the person or the minor.

In the vast majority of transactions these plaintiffs engage in the furnisher has no purpose of sexual arousal.  In order to bring their conduct arguably within the scope of the statute Powell's Books poses hypotheticals.  For example, "were a 17-year-old college student to ask a

bookseller for a sexy or erotic book to read on a dateless Saturday night, making a recommendation could subject the bookseller under Section 057 to a felony conviction and up to five years in jail." (Pls.' Mem. in Supp. of Perm. Inj. (#37) 22.)

The first problem with such a hypothetical is that it assumes a lot from the store clerk. It assumes that the customer's question moves the clerk from a state of boredom or disinterest to a point where the clerk's purpose is sexual arousal. While possible, it does not seem like the most common sense take on an otherwise pedestrian commercial transaction.

More fundamentally, plaintiffs have given the court nothing solid on which to base any conclusions about how often such transactions occur. Spinning hypotheticals is easy; it is a sort of intellectual parlor game in First Amendment law. But substantial overbreadth analysis has to be rooted in some sort of evidence or proof. When asked to determine whether a statute, on its face, "criminalizes a substantial amount of protected expressive activity," *Williams*, 128 S. Ct. at 1841, a court cannot just guess. Here, plaintiffs have offered no proof in support of their hypothetical. Of all the sales by Powell's Books in the last year, for example, how many of them involved a customer request for a "sexy novel"? Nor would such proof have been difficult to offer; an affidavit from a clerk that he or she is asked such a question X times per year would have sufficed.

I might be inclined to overlook the lack of any evidence to support a hypothetical if it were based on fairly quotidian assumptions. But when the hypotheticals start taking on a strained quality, clearly constructed to create criminal risk where the normal transaction has none (*see, e.g.*, the "21-year-old husband giving his 17-year-old wife a book to sexually arouse her" (Pls.' Mem. in Supp. of Perm. Inj. (#37) 16)), then standard principles of burden of proof require

PAGE 30 - OPINION AND ORDER

plaintiffs to do more than imagine the possibility of harm.  And this is particularly important

when the question is substantial overbreadth.

It is worth noting that we are dealing with a facial challenge here.  In the unlikely event

that the "sexy novel" transaction results in an actual prosecution, these same arguments about the

constitutionality of Section 057 can be resurrected, without the limitation of the substantial

overbreadth doctrine.  But for now, I find plaintiffs have failed to meet their burden of showing

Section 057 criminalizes a *substantial amount* of protected expressive activity.

IV.     **Speech That Is Part of a Crime**

The State argues that Powell's Books's overbreadth challenge to Section 057 is

"meritless" because the statute is directed at conduct, "the sexual predation of children," not at

speech.  (Defs.' Mem. in Opp. to Perm. Inj. (#44) 24.)  The State suggests that the proper test is

the following: "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of

conduct, a sufficiently important governmental interest in regulating the nonspeech element can

justify incidental limitations on First Amendment freedoms."  *United States v. O'Brien*, 391 U.S.

367, 376 (1968).  When a statute is aimed at conduct, rather than at the content of speech, strict

scrutiny is not applicable.  Instead, "a government regulation is sufficiently justified if it is within

the constitutional power of the Government; if it furthers an important or substantial

governmental interest, if the governmental interest is unrelated to the suppression of free

expression; and if the incidental restriction on alleged First Amendment freedoms is no greater

than is essential to the furtherance of that interest."  *Id.* at 377.

The State contends that Section 057 meets the *O'Brien* standard because (1) the state has

the power to pass such a law; (2)  it is content neutral (adopted to protect children from

predators, not because the state disagrees with the subject) and the state has a substantial interest in protecting minors; and (3) it prohibits no more speech than necessary because it prohibits only the furnishing of materials with the specific intent to arouse the minor or for self-arousal.  (Defs.' Mem. in Opp. to Perm. Inj. (#44) 27.)

This is not the proper test under which to analyze Section 057 because the statute regulates speech, not just conduct.[15]  In fact, the state court cases cited by the State upholding "luring" statutes under the First Amendment, do not support the use of the *O'Brien* test in this case.  (*See id.* at 24-25.)  Rather, they follow the rule that speech integral to the commission of a crime is unprotected under the First Amendment.[16]  "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.  We reject the contention now." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949).  Several state courts have

─────────────────

[15] Even if it were the proper test, Section 057 fails the *O'Brien* standard, despite the presence of a compelling government interest, because it is not content-neutral, it discriminates based on the content by criminalizing only sexual speech/behavior.

[16] Two of the cases considered statutes that banned only sex-related speech, i.e. were content based, like Sections 054 and 057 and are therefore illustrative.  *See State v. Backlund*, 672 N.W.2d 431 (N.D. 2003); *People v. Foley*, 731 N.E.2d 123 (N.Y. 2000).  In *Foley*, the New York Court of Appeals found that the state statute at issue was content-based because it was aimed only at sexually explicit communication and that strict scrutiny was therefore appropriate. *Foley*, 731 N.E.2d at 131.  The court then found that the statute survived strict scrutiny and was the least restrictive means available to further the state interest because it "curtail[ed] the *use* of speech in a way which does not merit First Amendment protection." *Id.* at 131-32.  It does not merit protection because it is "speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Id.* at 132 (quoting *Ferber*, 458 U.S. at 761-62).  In *Backlund*, the North Dakota Supreme Court extensively examined a variety of cases upholding luring statutes and found that "[t]he common thread in the cases involving First Amendment challenges to luring statutes is that freedom of speech does not extend to speech used as an integral part of conduct in violation of a valid criminal statute." *Backlund*, 672 N.W.2d at 441.

interpreted this statement to allow state statutes outlawing "luring" in a wide variety of contexts, including luring children into illegal sexual conduct and luring children in order to abduct them. *See Backlund*, 672 N.W.2d at 438-42 (collecting and analyzing cases).

Section 057(1)(b)(A) does not prevent the act of sexual abuse, but instead the distribution of materials for the sexual arousal or satisfaction of a minor.  Or. Rev. Stat. § 167.057(1)(b)(A). This is an important distinction because the cases cited by the State dealt only with statutes that banned speech luring minors into behavior outlawed by a valid criminal statute.  *See, e.g.*, *United States v. Meek*, 366 F.3d 705, 718 (quoting 18 U.S.C. § 2422(b) (2002)) ("Whoever . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, *to engage in prostitution or any sexual activity* . . . ." (emphasis added)).  While Section 057(1)(b)(B), bans furnishing the materials for the purpose of "inducing the minor to engage in sexual conduct," which is itself a crime, Section 057(1)(b)(A) bans furnishing the materials for the purpose of "arousing" the minor, which is not a crime.  This differentiates Section 057(1)(b)(A) from a situation where a "[d]efendant is accountable not for his *words*, but for the *act of communicating* with a perceived minor *with intent* to make her the victim of a crime." (Defs.' Mem. in Opp. to Perm. Inj. (#44) 24 (quoting *People v. Cervi*, 717 N.W.2d 356, 366-68 (Mich. Ct. App. 2006)).)  Thus, Section 057 is not a valid restriction on speech furthering a criminal act.

## V.   **Vagueness**

Due process requires that a law be struck down as void for vagueness "if its prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Statutes that are insufficiently clear are void for several reasons.  First, laws must "give the person of ordinary

intelligence a reasonable opportunity to know what is prohibited" so that we do not punish

people for behavior they could not have known was illegal. *Id.* Second, laws must avoid

delegating "basic policy matters to policemen, judges, and juries," leading to "arbitrary and

discriminatory enforcement" of the law. *Id.* at 108-09. Third, law must "avoid any chilling effect

on the exercise of First Amendment freedoms." *Foti*, 146 F.3d at 638 (citing *Grayned*, 408 U.S.

at 109).

"The requirement of clarity is enhanced when criminal sanctions are at issue or when the

statute 'abut[s] upon sensitive areas of basic First Amendment freedoms.'" *Info. Providers' Coal.*

*for Def. of the First Amendment v. FCC*, 928 F.2d 866, 874 (9th Cir. 1991) (quoting *Grayned*,

408 U.S. at 109). However, there is no "mathematical certainty" in language, *Grayned*, 408 U.S.

at 110, therefore courts must read statutes with "'flexibility and reasonable breadth,' not

'meticulous specificity,'" *Foti*, 146 F.3d at 639 (quoting *Grayned*, 408 U.S. at 110). For this

reason, "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what

the statute proscribes 'in the vast majority of its intended applications.'" *Cal. Teachers Ass'n v.*

*State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001) (quoting *Hill v. Colorado*, 530 U.S. 703,

733 (2000)). Finally, in evaluating a facial challenge to a state law, a federal court must consider

any limiting constructions proffered by a state court or enforcement agency. *Vill. of Hoffman*

*Estates v. Flipside, Hoffman Estates, Inc.*, 455 US. 489, 494 n.5 (1982).

Powell's Books argues that the exception, "merely an incidental part of an otherwise

nonoffending whole and serve[s] some purpose other than titillation," is vague because the

meaning is not readily ascertainable. (Pls.' Mem. in Supp. of Perm. Inj. (#37) 26.) "Incidental"

means "subordinate, nonessential, or attendant in position or significance," and Powell's Books

suggests that what is subordinate or nonessential is in the eye of the beholder, particularly when the Statutes contain no reference to community standards.  (*Id.* at 27 (quoting *Webster's 3d New Int'l Dictionary* 1142 (2002)).)  They also suggests that the phrase "reason other than titillation" is unclear because it does not indicate what to do when the material is provided for more than one purpose, or how much of the purpose must be titillation before the statute bans the material. (*Id.* at 27-28.)  Finally Powell's Books asks the question, to whose purpose do the Statutes refer? (*Id.* at 28 n.17.)

The Statutes are not unconstitutionally vague.  The *Maynard* exception has already been defined so that materials that are provided for more than one purpose may benefit from the exception unless their *primary* purpose is sexual arousal.  *See supra* Part III.A.1.c.  Once the Statutes are properly defined, Powell's Books's arguments disappear.

It is true there may be situations in which it is difficult to determine the primary purpose of a material or of a person.  However, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 128 S. Ct. at 1846. Thus, the Supreme Court has struck downs statutes tying criminal liability to subjective judgments regarding whether the defendant's behavior was "annoying" or "indecent." *Id.* (citing *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971); *Reno*, 521 U.S. at 870-71, 871 n.35).  In *Williams*, the Court upheld a statute requiring "that the defendant hold, and make a statement that reflects, the belief that [] material is child pornography," because these are questions of fact, true-or-false determinations.  *Id.*  Determining the primary purpose of sexually explicit materials and of a defendant in furnishing the materials, is similarly a simple question of fact.  Either the

PAGE 35 - OPINION AND ORDER

primary purpose is sexual arousal or it is not.  The decision may be difficult sometimes, "[b]ut

courts and juries every day pass upon knowledge, belief and intent—the state of men's

minds—having before them no more than evidence of their words and conduct." *Id.* (quoting

*Am. Commc'ns Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 411 (1950).

Furthermore, the State contends that what the Statutes proscribe is clear in the vast

majority of the intended applications.  (Defs.' Mem. in Opp. to Perm. Inj. (#44) 32.)  Oregon

points to *California Teachers Association*, in which the Ninth Circuit found that the terms

"overwhelmingly" and "nearly all" were not too vague to provide notice of how much English

was required to be spoken in school to avoid liability.  *Cal. Teachers Ass'n*, 271 F.3d at 1152.

There, the court indicated that it was "necessary to consider the context in which the statute

operates" when analyzing whether a statute's vagueness impermissibly chills First Amendment

expression.  *Id.* at 1154.  In context, these statutes are obscenity laws aimed at protecting children

from "luring" and "grooming," and are as clear as all the statutes incorporating "prurient interest"

and "patently offensive" from the *Miller* obscenity test.  (Defs.' Mem. in Opp. to Perm. Inj. (#44)

33.)

## CONCLUSION

Based on the foregoing, Powell's Books's Motion for Permanent Injunction and

Declaration of Unconstitutionality (#36) is DENIED.

IT IS SO ORDERED.

Dated this _12th_ day of December, 2008.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

PAGE 36 - OPINION AND ORDER