# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

POWELL'S BOOKS, INC.; OLD
MULTNOMAH BOOK STORE, LTD.,
DBA Annie Bloom's Books; DARK
HORSE COMICS, INC.; COLETTE'S:
GOOD FOOD + HUNGRY MINDS,
LLC; BLUEJAY, INC., DBA Paulina
Springs Books; ST. JOHN'S
BOOKSELLERS, LLC; AMERICAN
BOOKSELLERS FOUNDATION FOR FREE
EXPRESSION; ASSOCIATION OF
AMERICAN PUBLISHERS, INC.;
FREEDOM TO READ FOUNDATION,
INC.; COMIC BOOK LEGAL DEFENSE
FUND,

    *Plaintiffs-Appellants,*

  and

AMERICAN CIVIL LIBERTIES UNION OF
OREGON; CANDACE MORGAN;
PLANNED PARENTHOOD OF THE
COLUMBIA/WILLAMETTE, INC.;
CASCADE AIDS PROJECT,

    *Plaintiffs,*

  v.

14447

JOHN R. KROGER, in his official
capacity as Attorney General of
the State of Oregon; MATT
SHIRTCLIFF, Baker County District
Attorney, in his official capacity;
JOHN HAROLDSON, Benton County
District Attorney, in his official
capacity; JOHN FOOTE, Clackamas
County District Attorney, in his
official capacity; JOSHUA MARQUIS,
Clatsop County District Attorney,
in his official capacity; STEVE
ATCHISON, Columbia County
District Attorney, in his official
capacity; PAUL FRASIER, Coos
County District Attorney, in his
official capacity; GARY WILLIAMS,
Crook County District Attorney, in
his official capacity; EVERETT
DIAL, Curry County District
Attorney, in his official capacity;
MICHAEL DUGAN, Deschutes
County District Attorney, in his
official capacity; JACK BANTA,
Douglas County District Attorney,
in his official capacity; MARION
WEATHERFORD, Gilliam County
District Attorney, in his official
capacity; RYAN JOSLIN, Grant
County District Attorney, in his
official capacity;

Tim Colahan, Harney County
District Attorney, in his official
capacity; John Sewell, Hood
River County District Attorney, in
his official capacity; Mark
Huddleston, Jackson County
District Attorney, in his official
capacity; Peter L. Deuel,
Jefferson County District Attorney,
in his official capacity; Stephen D.
Campbell, Josephine County
District Attorney, in his official
capacity; Edwin I. Caleb, Klamath
County District Attorney, in his
official capacity; David A.
Schutt, Lake County District
Attorney, in his official capacity;
Douglass Harcleroad, Lane
County District Attorney, in his
official capacity; Bernice Barnett,
Lincoln County District Attorney,
in her official capacity; Jason
Carlile, Linn County District
Attorney, in his official capacity;
Dan Norris, Malheur County
District Attorney, in his official
capacity; Walter M. Beglau,
Marion County District Attorney,
in his official capacity; Elizabeth
Ballard, Morrow County District
Attorney, in her official capacity;

14450          Powell's Books v. Kroger

Michael D. Schrunk, Multnomah
County District Attorney, in his
official capacity; John Fisher,
Polk County District Attorney, in
his official capacity; Wade M.
McLeod, Sherman County District
Attorney, in his official capacity;
William Bryan Porter, Tillamook
County District Attorney, in his
official capacity; Dean Gushwa,
Umatilla County District Attorney,
in his official capacity; Tim
Thompson, Union County District
Attorney, in his official capacity;
Daniel Ousley, Wallowa County
District Attorney, in his official
capacity; Eric J. Nisley, Wasco
County District Attorney, in his
official capacity; Robert
Hermann, Washington County
District Attorney, in his official
capacity; Thomas W. Cutsforth,
Wheeler County District Attorney,
in his official capacity; Brad
Berry, Yamhill County District
Attorney, in his official capacity,
       *Defendants-Appellees.*

No. 09-35153
D.C. No.
3:08-cv-00501-MO

AMERICAN CIVIL LIBERTIES UNION OF
OREGON; CANDACE MORGAN;
PLANNED PARENTHOOD OF THE
COLUMBIA/WILLAMETTE, INC.;
CASCADE AIDS PROJECT,

               *Plaintiffs-Appellants,*

        and

POWELL'S BOOKS, INC.; OLD
MULTNOMAH BOOK STORE, LTD.,
DBA Annie Bloom's Books; DARK
HORSE COMICS, INC.; COLETTE'S:
GOOD FOOD + HUNGRY MINDS,
LLC; BLUEJAY, INC., DBA Paulina
Springs Books; ST. JOHN'S
BOOKSELLERS, LLC; AMERICAN
BOOKSELLERS FOUNDATION FOR FREE
EXPRESSION; ASSOCIATION OF
AMERICAN PUBLISHERS, INC.;
FREEDOM TO READ FOUNDATION,
INC.; COMIC BOOK LEGAL DEFENSE
FUND,

               *Plaintiffs,*

        v.

JOHN R. KROGER, in his official
capacity as Attorney General of
the State of Oregon; MATT
SHIRTCLIFF, Baker County District
Attorney, in his official capacity;
JOHN HAROLDSON, Benton County
District Attorney, in his official
capacity; JOHN FOOTE, Clackamas
County District Attorney, in his
official capacity; JOSHUA MARQUIS,
Clatsop County District Attorney,
in his official capacity; STEVE
ATCHISON, Columbia County
District Attorney, in his official
capacity; PAUL FRASIER, Coos
County District Attorney, in his
official capacity; GARY WILLIAMS,
Crook County District Attorney, in
his official capacity; EVERETT
DIAL, Curry County District
Attorney, in his official capacity;
MICHAEL DUGAN, Deschutes
County District Attorney, in his
official capacity; JACK BANTA,
Douglas County District Attorney,
in his official capacity; MARION
WEATHERFORD, Gilliam County
District Attorney, in his official
capacity; RYAN JOSLIN, Grant
County District Attorney, in his
official capacity;

Powell's Books v. Kroger                14453

Tim Colahan, Harney County
District Attorney, in his official
capacity; John Sewell, Hood
River County District Attorney, in
his official capacity; Mark
Huddleston, Jackson County
District Attorney, in his official
capacity; Peter L. Deuel,
Jefferson County District Attorney,
in his official capacity; Stephen D.
Campbell, Josephine County
District Attorney, in his official
capacity; Edwin I. Caleb, Klamath
County District Attorney, in his
official capacity; David A.
Schutt, Lake County District
Attorney, in his official capacity;
Douglass Harcleroad, Lane
County District Attorney, in his
official capacity; Bernice Barnett,
Lincoln County District Attorney,
in her official capacity; Jason
Carlile, Linn County District
Attorney, in his official capacity;
Dan Norris, Malheur County
District Attorney, in his official
capacity; Walter M. Beglau,
Marion County District Attorney,
in his official capacity; Elizabeth
Ballard, Morrow County District
Attorney, in her official capacity;

MICHAEL D. SCHRUNK, Multnomah
County District Attorney, in his
official capacity; JOHN FISHER,
Polk County District Attorney, in
his official capacity; WADE M.
MCLEOD, Sherman County District
Attorney, in his official capacity;
WILLIAM BRYAN PORTER, Tillamook
County District Attorney, in his
official capacity; DEAN GUSHWA,
Umatilla County District Attorney,
in his official capacity; TIM
THOMPSON, Union County District
Attorney, in his official capacity;
DANIEL OUSLEY, Wallowa County
District Attorney, in his official
capacity; ERIC J. NISLEY, Wasco
County District Attorney, in his
official capacity; ROBERT
HERMANN, Washington County
District Attorney, in his official
capacity; THOMAS W. CUTSFORTH,
Wheeler County District Attorney,
in his official capacity; BRAD
BERRY, Yamhill County District
Attorney, in his official capacity,
          *Defendants-Appellees.*

No. 09-35154
D.C. No.
3:08-cv-00501-MO
OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
June 8, 2010—Portland, Oregon

Filed September 20, 2010

POWELL'S BOOKS v. KROGER     14455

Before: Ferdinand F. Fernandez, M. Margaret McKeown,
and Richard A. Paez, Circuit Judges.

Opinion by Judge McKeown

## COUNSEL

Michael A. Bamberger, Sonnenschein Nath & Rosenthal LLP,
New York, New York; P.K. Runkles-Pearson, Stoel Rives

LLP, Portland, Oregon; Chin See Ming, ACLU Foundation of
Oregon, Inc., Portland, Oregon, for the plaintiffs-appellants.

Michael A. Casper, Oregon Department of Justice, Salem,
Oregon, for the defendants-appellees.

J. Joshua Wheeler, The Thomas Jefferson Center for the Pro-
tection of Free Expression, Charlottesville, Virginia, for
amicus curiae.

---

## OPINION

McKEOWN, Circuit Judge:

We consider here the constitutionality of a pair of Oregon
statutes intended to stop child sexual abuse in its early stages.
The statutes broadly take aim at practices of "luring" and
"grooming" that expose minors to sexually explicit materials
in the hopes of lowering their inhibitions against engaging in
sexual conduct. The "furnishing" statute, Oregon Revised
Statutes § 167.054 ("section 054"), criminalizes providing
children under the age of thirteen with sexually explicit mate-
rial. The "luring" statute, § 167.057 ("section 057"), criminal-
izes providing minors under the age of eighteen with visual,
verbal, or narrative descriptions of sexual conduct for the pur-
pose of sexually arousing the minor or the furnisher, or induc-
ing the minor to engage in sexual conduct.

Appellants, a broad cross-section of booksellers; non-profit
literary, legal, and health organizations; and a concerned
grandmother (together, "Powell's Books"), argue that these
statutes violate the First Amendment. In particular, Powell's
Books claims, among other things, that the statutes are
facially overbroad and criminalize a substantial amount of
constitutionally protected speech. We agree.

Although the state argues that the statutes may be construed to narrowly focus on the sharing of hardcore pornography or material that is obscene to minors alone, its position is contradicted by the statutory text. Repeated reliance on the legislature's efforts to combat hardcore pornography cannot change the text of the statute. The legislative goal does not match the text of the statutes; the statutes' undoing is their overbreadth. In their current form, the statutes sweep up a host of material entitled to constitutional protection, ranging from standard sexual education materials to novels for children and young adults by Judy Blume. Despite the legislature's laudable goals, we cannot rewrite the statute to conform to constitutional limitations.[1]

## BACKGROUND

We begin with a review of the statutory scheme. The statutes follow a series of related anti-child abuse laws that the Oregon courts invalidated under the state constitution's speech clause in 2000. *See State v. Maynard*, 5 P.3d 1142, 1149-51 (Or. Ct. App. 2000) (discussing previous cases). In 2007, the legislature went back to the drawing board and enacted the current statutes in an effort to address the perceived gap in Oregon's child abuse prevention scheme.

Section 054, the "furnishing" statute, criminalizes the act of "intentionally furnish[ing] a child [under the age of thirteen], or intentionally permit[ting] a child to view, sexually explicit material" where the person "knows that the material is sexually explicit material." OR. REV. STAT. § 167.054(1).[2] Furnishing is a Class A misdemeanor. This section includes several

---

[1]Because the statutes are unconstitutionally overbroad, we do not address the challenge to the provisions as void for vagueness or the challenges to the statutes as applied to particular works.

[2]The Oregon statutes define "child" as "a person under 13 years of age." OR. REV. STAT. § 167.051(1). " 'Furnishes' means to sell, give, rent, loan or otherwise provide." *Id.* § 167.051(2).

14460          POWELL'S BOOKS v. KROGER

exemptions, including immunity for acts of furnishing mate-
rial whose "sexually explicit portions . . . form merely an inci-
dental part of an otherwise nonoffending whole and serve
some purpose other than titillation." *Id.* § 167.054(2)(b).[3] Sec-
tion 054 also includes a number of affirmative defenses.[4]

Section 057 criminalizes "luring," which is defined as
"[f]urnish[ing] to, or us[ing] with, a minor" a "visual repre-
sentation or explicit verbal description or narrative account of
sexual conduct" for the purpose of "[a]rousing or satisfying
the sexual desires of the person or the minor" or "[i]nducing
the minor to engage in sexual conduct." *Id.* § 167.057(1).[5]
Luring is a Class C felony. Like section 054, section 057
exempts the furnishing or use of "a representation, description
or account of sexual conduct that forms merely an incidental
part of an otherwise nonoffending whole and serves some
purpose other than titillation." *Id.* § 167.057(2). The section
also includes similar affirmative defenses.[6]

---

[3]Employees of museums, schools, law enforcement agencies, medical
treatment providers, and public libraries acting within the scope of regular
employment are also exempt from prosecution. OR. REV. STAT.
§ 167.054(2)(a)

[4]In particular, it is an affirmative defense that the material was furnished
(or that viewing was permitted) "solely for the purpose of sex education,
art education or psychological treatment" by a parent or legal guardian, an
education or treatment provider, or their agent. OR. REV. STAT.
§ 167.054(3)(a). It is also an affirmative defense to have "reasonable cause
to believe" that the person who received or viewed the material was not
a child, or that the defendant was less than three years older than the child.
*Id.* § 167.054(3)(b)-(c).

[5]Plaintiffs do not challenge the constitutionality of the inducing prong,
and we do not address it here. *See* OR. REV. STAT. § 174.040 (noting that
"if any part of a statute is held unconstitutional, the remaining parts shall
remain in force unless" an enumerated exception applies).

[6]In particular, it is an affirmative defense to furnish or use the material
for psychological or medical treatment by a treatment provider or her
agent, but it is not a defense to provide the material for sex or art educa-
tion by permission of a parent or legal guardian. OR. REV. STAT.
§ 167.057(3)(a). It is also an affirmative defense to have "reasonable cause
to believe" the recipient of the material or person with whom the material
was used was not a minor, *id.* § 167.057(3)(b), or that the defendant was
less than three years older than the minor. *Id.* § 167.057(3)(c).

Powell's Books brought suit seeking a declaration of the unconstitutionality of, and injunction against enforcement of, sections 054 and 057 under the First, Fifth, and Fourteenth Amendments. The district court denied Powell's Books' motions for preliminary and permanent injunctions, finding the statutes neither unconstitutionally overbroad nor void for vagueness. *Powell's Books, Inc. v. Myers*, 599 F. Supp. 2d 1226, 1243-44, 1246-47, 1249-50 (D. Or. 2008). The district court also rejected Powell's Books' pre-enforcement, as-applied challenges on grounds that the plaintiffs were too diverse and that the works that allegedly fell within the reach of the statutes were too dissimilar. *Id.* at 1235-36.

## ANALYSIS

We address Powell's Books' overbreadth challenge alone as it suffices to dispose of this case.[7] In examining an overbreadth challenge, we follow a familiar sequential analysis. First, we construe the reach of the statutory provisions. *United States v. Williams*, 553 U.S. 285, 293 (2008). Second, we inquire whether the statute criminalizes a "substantial amount" of expressive activity. *Id.* at 297. Finally, we consider whether the statute is "readily susceptible" to a limiting construction that would render it constitutional. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988) (internal quotation marks omitted).

The statutes cannot survive this inquiry. Contrary to the state's position, the statutes reach the distribution of far more material than hardcore pornography or material that is obscene to minors, and they implicate a substantial amount of

---

[7]We review de novo the denial of declaratory relief. *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1040 (9th Cir. 2004). We review denial of a permanent injunction for an abuse of discretion, but review the underlying determination of the statutes' constitutionality de novo and the underlying findings of fact for clear error. *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003).

constitutionally protected speech. In addition, the statutes are
not subject to a limiting construction that would make them
constitutional. For this reason, we conclude that Oregon
Revised Statutes §§ 167.054 and 167.057 (except the "induc-
ing" prong, which is not at issue here) are unconstitutionally
overbroad and must be invalidated.

## I.   The Scope of Sections 054 and 057

We begin with the scope of the statutes. In construing the
reach of sections 054 and 057, our role is to "interpret the law
as would the [Oregon] Supreme Court." *Planned Parenthood
of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004).
This process is a different undertaking than construing a fed-
eral statute. Under Oregon rules of construction, we first con-
sider text and context together. *State v. Gaines*, 206 P.3d
1042, 1050-51 (Or. 2009). We may also consider legislative
history proffered by a party to the extent that it is useful. *Id.*
If the scope of the statute remains ambiguous at that point in
the analysis, we may then turn to "general maxims of statu-
tory construction" to resolve our uncertainty. *Id.* The Oregon
approach contrasts with the standard federal statutory con-
struction, which looks first to the text and then, in the case of
ambiguity, employs the canons of construction and, in light of
the debate over its significance, may or may not involve a ref-
erence to legislative history. *See Clark v. Martinez*, 543 U.S.
371, 385 (2005); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546, 568 (2005).

**[1]** On their face, the liability provisions of sections 054
and 057 cover a range of material. Section 054(1) criminalizes
furnishing "sexually explicit material" to children. The defini-
tions provision of the statute, § 167.051, specifically defines
"sexually explicit material" as "material containing visual
images" of:

(a) Human masturbation or sexual intercourse;

(b) Genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals; or

(c) Penetration of the vagina or rectum by any object other than as part of a personal hygiene practice.

*Id.* § 167.051(5).

**[2]** Section 057(1) criminalizes furnishing a minor or "us-[ing]" a "visual representation or explicit verbal description or narrative account of sexual conduct" with a minor.[8] "Sexual conduct" is defined as the same acts depicted in "sexually explicit material," except it adds the "[t]ouching of the genitals, pubic areas or buttocks of the human male or female or of the breasts of the human female." *Id.* § 167.051(4). The definition of "sexual conduct" is also narrower in that it excludes "[p]enetration of the vagina or rectum by any object" where "part of a medical diagnosis or as part of a personal hygiene practice," whereas the definition of "sexually explicit material" only excludes such penetration when part of a "personal hygiene practice." *Compare* Or. Rev. Stat. § 167.051(4)(c) *with* Or. Rev. Stat. § 167.051(5)(c).

The state chiefly seeks to limit the breadth of sections 054 and 057 based on the exemption from liability that appears in both provisions—that is, the exemption for materials whose sexual content "form[s] merely an incidental part of an otherwise nonoffending whole and serves some purpose other than titillation." *See* Or. Rev. Stat. § 167.054(2)(b); *see also id.* § 167.057(2). In the state's view, this exemption narrows the

---

[8]Because the statute does not define "explicit" as it is used in section 057, we refer to its ordinary, dictionary meaning—that is, as "fully revealed or expressed without vagueness, implication, or ambiguity" and "open in the depiction of nudity or sexuality." *Merriam-Webster Online Dictionary* (2010), http://www.merriam-webster.com/dictionary/explicit; *see Doe v. Medford Sch. Dist. 549C*, 221 P.3d 787, 792 (Or. Ct. App. 2009).

statutes to bar the dissemination only of "hardcore pornography" to children and minors.

**[3]** This argument is unavailing. The text and context show that the statutes cover far more than what might qualify as hardcore pornography. The statutory text makes no mention of "hardcore pornography," but rather refers to "sexually explicit material" and a "visual representation or explicit verbal description or narrative account of sexual conduct." OR. REV. STAT. §§ 167.054(1), 167.057(1)(a). As the materials in the record show, whatever the precise boundaries of hardcore pornography may be, the statutes clearly extend beyond them. Powell's Books submitted a wide array of books to illustrate its argument. Consider, for example, the well-known drawings of sex acts in *The Joy of Sex*; the cartoon depictions of sexual intercourse in the children's book, *Mommy Laid an Egg, or Where* Do *Babies Come From?* by Babette Cole; or the fantastical sex scene between Charlotte and Lord Griffin in Kentaro Miura's manga, *Berserk*. All are visual depictions of "sexual intercourse" under section 054, yet they hardly count as hardcore pornography.

**[4]** Similarly, the references to the "visual representation" and "explicit" verbal depictions of "sexual conduct" in section 057 are not synonymous with hardcore pornography. Section 057 reaches representations of activity, including the touching of breasts or buttocks, that are commonly seen or read outside of pornographic materials, hardcore or otherwise. Examples include the books listed above, along with the scenes of "sexual conduct" that appear in a work like Margaret Atwood's classic and frequently-taught novel, *The Handmaid's Tale*.

To be sure, the exemption constrains the statutes' reach to a certain extent. It does not, however, limit their application to materials that fall outside constitutional protection. Again the text and context make this clear. As a preliminary matter, we note that the requirement of a non-"titillating" purpose refers to the explicit portion of the materials, and not the work

as a whole. In section 054, the word "serve" agrees grammatically with "sexually explicit portions," not with the "nonoffending whole." *See* OR. REV. STAT. § 167.054(2)(b) (referring to "material the sexually explicit portions of which form merely an incidental part of an otherwise nonoffending whole and serve some purpose other than titillation"). Similarly, in section 057, the word "serves" agrees with "representation, description or account of sexual conduct." *See id.* § 167.057(2) (referring to "a representation, description or account of sexual conduct that forms merely an incidental part of an otherwise nonoffending whole and serves some purpose other than titillation"). Thus, the exemption considers whether the explicit portion of the material, and not the work as such or as a whole, serves some purpose other than arousal.

The state bases its "hardcore pornography" argument on a disjunctive reading of the exemption. In the state's view, a work may provide the basis for prosecution unless its explicit portions form "merely an incidental part of an otherwise nonoffending whole" *or* "serve some purpose other than titillation." To put this the other way around, the exemption ostensibly protects a work from giving rise to liability unless its sexually explicit portions form more than an incidental portion of the work as a whole and solely intend to titillate. Thus, the state argues, the statutes only cover hardcore pornography.[9]

The problem, however, is that the statute does not say "or" —it says "*and*." The two conditions for exemption from prosecution are plainly written in the conjunctive: a defendant must satisfy both conditions in order to avoid prosecution. Thus, a work might still give rise to liability if its sexually explicit portions solely intend to titillate but are only an inci-

---

[9]Because we reject this line of analysis, we do not address whether the state's definition of hardcore pornography is a viable one. Indeed, our decision rests on the text of the statute as written, not on an undefined premise that it targets hardcore pornography.

14466          POWELL'S BOOKS v. KROGER

dental part of the work as a whole (e.g., arguably, some of the sex scenes in *Berserk*). Likewise, a work might give rise to liability if its sexually explicit portions are more than an incidental part of the work, but do not solely intend to titillate (e.g., *The Handmaid's Tale*). Neither work, on the state's definition, constitutes hardcore pornography, yet they still potentially run afoul of the statutes.[10]

The state makes two related arguments that we decline to embrace. First, the state relies heavily on *State v. Maynard*, a decision by the Oregon Court of Appeals construing the predecessor provision to the exemption. In *Maynard*, the court addressed a statute that criminalized furnishing minors any visual representation of "a person or portion of the human body that depicts nudity, sadomasochistic abuse, sexual conduct or sexual excitement." OR. REV. STAT. § 167.065(1)(a) (repealed 2007). The statute provided an affirmative defense that is essentially identical to the exemption in sections 054 and 057: namely, a defense for so-called "contraband" that was "merely an incidental part of an otherwise nonoffending whole, and serving some purpose therein other than titillation[.]" OR. REV. STAT. § 167.085 (amended 2007).[11] Reading these provisions together, the court in *Maynard* construed the statute as "seek[ing] to prevent harm to children by prohibiting attempts to titillate them by means of sexually explicit

---

[10]Although the state cites several cases construing "and" to mean "or," they are all inapposite. *See Slodov v. United States*, 436 U.S. 238, 246-47 (1978) (same, where alternative reading would undermine the statute's purpose); *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1050-51 (9th Cir. 2003) (reading "and" disjunctively to avoid surplusage); *Ollilo v. Clatskanie People's Util. Dist.*, 132 P.2d 416, 419 (Or. 1942) (construing the term "and/or"); *Pendleton Sch. Dist. 16R v. State*, 185 P.3d 471, 479 (Or. Ct. App. 2008) (reading "and" disjunctively to avoid internal contradiction), *aff'd in part and rev'd in part on other grounds*, 200 P.3d 133 (Or. 2009).

[11]As the court explained, "titillate" in this context meant "to [sexually] excite pleasurably or agreeably" or to "arouse by stimulation." *Maynard*, 5 P.3d at 1147 (internal quotation marks omitted).

materials" and to "protect[ ] children from the harmful effects of viewing hardcore pornography." *Maynard*, 5 P.3d at 1147, 1148 (internal quotation marks omitted). The court especially based its interpretation on the defense in former § 167.085, which "plainly . . . applie[d] to those materials not primarily intended to titillate the victim." *Id.* at 1147.

The state argues that *Maynard* requires construing sections 054 and 057 as limited to hardcore materials. *Maynard*, however, is of limited relevance and does not authorize reading the exemption in the state's expansive manner. In holding that the statute was aimed at the effects of exposure to hardcore pornography, *Maynard* did not construe the *scope* of the statute, but rather addressed the threshold issue, under Oregon free speech doctrine, of whether the statute "sufficiently identified the harmful effects it sought to prevent." *Id.* at 1146.[12] Indeed, upon turning to the scope of the material covered, the court went on to strike down the statute as overbroad. *See id.* at 1150-51.[13] Thus, even assuming that, under *Maynard*, sections 054 and 057 similarly aim at effects the legislature deemed harmful, that does not determine what materials actually fall within their reach.

**[5]** As a second line of defense, the state cites legislative history that likewise reflects the legislature's concerns about minors' exposure to hardcore pornography. In the state's

---

[12]Under the Oregon framework, courts examine first whether the restriction aims at the content of speech or the harmful effects of speech. If the law targets content, it is unconstitutional unless the restraint is confined within some historical exception. If the law targets effects, courts scrutinize it for overbreadth. *State v. Robertson*, 649 P.2d 569, 576-77 (Or. 1982).

[13]Significantly, in *Maynard* the court specifically held the statute to be overbroad because the defense did not apply to all acts of "furnishing," but rather only to the acts of "display," "showing," and "exhibition." *Maynard*, 5 P.3d at 1150-51. Contrary to the state's argument, *Maynard* did not reach the issue of whether the defense was sufficient to save the statute from overbreadth with respect to the expressive activity it did cover.

14468          POWELL'S BOOKS V. KROGER

view, the legislature was highly cognizant of state court decisions striking down previous laws on sharing explicit materials with minors as overbroad and endeavored to draft a statute focused narrowly on hardcore pornography.**14** However, "[w]hen the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different." *Gaines*, 206 P.3d at 1051. Regardless of any contrary suggestions in the legislative history, the statutory text is plainly not limited to offending pornographic materials that the state hoped to target. In short, good intentions cannot trump the language of the statute.

## II. THE CRIMINALIZATION OF A SUBSTANTIAL AMOUNT OF EXPRESSIVE ACTIVITY

[6] Having delimited the reach of the statutes, we consider whether they criminalize a substantial amount of expressive activity.[15] States may restrict the access of minors to obscene

---

[14] *See, e.g.*, *Maynard*, 5 P.3d at 1150 (invalidating statute that criminalized visual images of sexual conduct and sexual excitement "regardless of the significance of such depictions in the context of the materials taken as a whole"); *State v. Woodcock*, 706 P.2d 1012, 1013 (Or. Ct. App. 1985) (deeming overbroad a statute that "essentially prohibits furnishing minors with *any* printed matter containing 'dirty words' no matter how incidental the objectionable language is in the context of the work as a whole"); *State v. Frink*, 653 P.2d 553, 555 (Or. Ct. App. 1982) (invalidating a ban on furnishing a minor with materials that depict nudity regardless of erotic content).

[15] The state argues that section 057 is directed at the conduct of "luring minors using pornography" and not speech, and thus falls outside First Amendment protections. However, the statute plainly applies to materials covered by the First Amendment. The statute does not proscribe speech that is integral or limited to criminal conduct—that is, speech that is "the vehicle" for a crime. *United States v. Dhingra*, 371 F.3d 557, 561 (9th Cir. 2004); *United States v. Meek*, 366 F.3d 705, 721 (9th Cir. 2004). Section 057 curbs speech used to induce prospective victims to engage in sexual activity but also criminalizes providing materials to arouse or satisfy sexual desires. OR. REV. STAT. § 167.057(1)(b). Whereas inducing a minor to engage in sexual activity is independently criminal, arousing oneself or a minor is not.

material so long as the legislature has a rational basis "to find that exposure to material condemned by the statute is harmful to minors." *Ginsberg v. New York*, 390 U.S. 629, 641 (1968). A state may impose such restrictions even if the material at issue is not obscene to adults. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 101 (2d Cir. 2003). However, "[s]peech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Erznoznik v. Jacksonville*, 422 U.S. 205, 213-14 (1975).

In *Ginsberg*, the Court upheld a New York statute that criminalized the sale of "girlie magazines" to persons under the age of seventeen. 390 U.S. at 631-33. This statute incorporated the obscenity test previously articulated in *Memoirs v. Massachusetts*, namely, that a work is obscene if

> (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.

383 U.S. 413, 418 (1966).

Five years after *Ginsberg*, the Court revisited the question of the appropriate obscenity standard for adults in *Miller v. California*, 413 U.S. 15 (1973). The Court explicitly rejected the lack of "redeeming social value" prong set forth in *Memoirs*, holding that a state could criminalize the distribution of only those materials that "taken as a whole, do not have serious literary, artistic, political, or scientific value." *Id.* at 24.[16]

---

[16]The Court left the other two prongs substantially unchanged, holding that material was obscene if "the average person, applying contemporary

The Supreme Court has never explicitly extended the "serious value" standard to obscenity for minors. *See Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 648 (7th Cir. 2006) (citing cases). The parties, however, argue that *Miller*'s amendment with respect to adults also applies to minors. A number of our sister circuits have approved of the adaptation of *Miller* to minors as well. *See, e.g.*, *Am. Booksellers v. Webb*, 919 F.2d 1493, 1503 & n.18 (11th Cir. 1990); *Am. Booksellers Ass'n v. Virginia*, 882 F.2d 125, 127 n. 2 (4th Cir. 1989); *M.S. News Co. v. Casado*, 721 F.2d 1281, 1286-87 (10th Cir. 1983).

**[7]** Ultimately, we need not decide this issue as the statutes are overbroad under both frameworks. Sections 054 and 057 sweep up material that, when taken as a whole, has serious literary, artistic, political, or scientific value for minors and thus also has at least *some* "redeeming social value." Because the statutes sweep beyond *Miller*'s more lenient definition of obscenity, they necessarily extend beyond the *Ginsburg* formulation as well. In addition, sections 054 and 057 do not limit themselves to material that predominantly appeals to minors' prurient interest. As a result, the statutes reach a substantial amount of constitutionally protected speech. Because the statutes fail to satisfy the first two prongs of *Miller/Ginsberg*, we need not determine whether they also criminalize the furnishing of a significant amount of material that is not patently offensive.

## A. SERIOUS VALUE

**[8]** Nothing in the language of the statutes, including the exemptions, takes the "serious value" of the work as a whole

---

community standards would find that the work, taken as a whole, appeals to the prurient interest" and "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law." *Miller*, 413 U.S. at 24 (internal citation and quotation marks omitted).

into account, or, for that matter, whether the work possesses
any "redeeming social value." A pair of examples from the
record highlight the statutes' overbreadth in this regard. *It's
Perfectly Normal* is a sexual education book containing sim-
ple line drawings that include non-obscene but unmistakable
images of sexual intercourse and masturbation. As its subtitle
indicates, the book provides frank information about "chang-
ing bodies, growing up, sex & sexual health," and thus does
not lack serious scientific value even for children under the
age of thirteen. The images of sexual intercourse and mastur-
bation are "sexually explicit material" and, pursuant to section
054, they may not be furnished to children under the age of
thirteen. OR. REV. STAT. §§ 167.054(1); 167.051(5)(a). While
their primary purpose is education rather than titillation, the
images of sexual intercourse and masturbation are not an "in-
cidental" portion of the work as a whole, as they cannot be
considered subordinate or nonessential in a sexual education
manual. Thus, the exemption fails to shelter sexual education
materials like *It's Perfectly Normal* from liability.

**[9]** Similarly, section 057 sweeps up works like *Forever*,
a coming-of-age novel written by Judy Blume. *Forever*
includes explicit narrative accounts of masturbation, sexual
intercourse, and genital-genital contact, which are all depic-
tions of sexual conduct that may not be shared with minors,
if the furnisher intends to arouse the minor or the furnisher.
*See* OR. REV. STAT. §§ 167.057(a)-(b); 167.051(4)(a)-(b). But
*Forever* certainly contains serious artistic or literary value as
to minors as a whole, and the explicit narrative accounts in
*Forever* are not incidental to the coming of age story. *See
Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 248 (2002)
(explaining that inclusion of obscene portions that are part of
the narrative of a non-obscene work do not cause "the work
itself . . . [to] become obscene"). These examples are hardly
exotic. They demonstrate that the statutes reach a substantial
number of works that are not obscene to children or minors
because they fail to take into account the value of the work
as a whole.

### B.  Prurient Interest

**[10]** The statutes also do not limit themselves to material that predominantly appeals to prurient interest. Such material is understood to trigger responses "over and beyond" normal sexual arousal. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 498-99 (1985). Section 054 defines sexually explicit material to consist of visual images of sexual intercourse as well as more specific subcategories. This definition is broad enough to reach a substantial amount of material that does not appeal to the prurient interest of a child under thirteen, but merely appeals to regular sexual interest.

**[11]** Section 057 reaches even farther than section 054, criminalizing the furnishing of written and visual depictions of sexual intercourse, along with depictions of the "[t]ouching of the genitals, pubic areas or buttocks of the human male or female or of the breasts of the human female," to minors as old as seventeen. Or. Rev. Stat. §§ 167.051(4)(d); 167.057(1)(a). As the district court found, section 057 thus criminalizes fiction no more tawdry than a romance novel, "written or created to arouse the reader [or] viewer." *Powell's Books*, 599 F. Supp. 2d at 1246. In this respect, section 057 also reaches a substantial amount of expressive activity that does not appeal to the prurient interests of minors.

The exemption does not cure this overbreadth as it focuses on titillation, and not prurient interest. Titillation and arousal are not synonymous with an abnormal or prurient sexual response as described in *Brockett*. To criminalize furnishing material solely intended to titillate the reader will certainly sweep up some material that appeals to the prurient interest of children and minors, but it will also criminalize a broad swath of material that does not appeal to prurient interests.

**[12]** By restricting the dissemination and use of non-obscene material, the statutes trench on the First Amendment rights of minors and adults alike. On the one hand, the statutes

limit minors' access to expressive material that the state may not legitimately proscribe. *See Erznoznik*, 422 U.S. at 213-14. On the other, the statutes also restrict adults from providing minors with materials that are entirely anodyne for First Amendment purposes. The Supreme Court has repeatedly emphasized that the state may not prevent adults from circulating non-obscene materials amongst themselves. *See Ashcroft*, 535 U.S. at 252. Although we apply a "variable standard" for obscenity to minors, it is equally true that the state may not restrict adults from sharing material with minors that is not obscene for minors. The statutes' overbreadth impinges on the rights of all individuals to legitimately share and access non-obscene materials without the interference of the state.

## III. LIMITING CONSTRUCTION

**[13]** In light of the statutes' facial overbreadth, the only question remaining is whether the statutes are susceptible to a reasonable limiting construction. In addressing this issue, we consider the limiting constructions proffered by the state, but do not "insert missing terms into the statute or adopt an interpretation precluded by the plain language of the ordinance." *Foti v. City of Menlo Park*, 146 F.3d 629, 639 (9th Cir. 1998); *see also Frink*, 653 P.2d at 557-58. We may not "rewrite a state law to conform it to constitutional requirements." *Am. Booksellers*, 484 U.S. at 397.

**[14]** The statutes sweep in the many works that include portions solely intended to titillate and arouse the reader but have serious value when taken as a whole. The statutes also exempt materials based on a non-titillating purpose, rather than a prurient one. To satisfy the *Miller/Ginsberg* requirements, we would have to insert language where we are not permitted to do so. *See* OR. REV. STAT. § 174.010 (providing that "[i]n the construction of a statute, the office of the judge is . . . not to insert what has been omitted, or to omit what has

14474          POWELL'S BOOKS v. KROGER

been inserted."); *see also United States v. Stevens*, 130 S. Ct.
1577, 1592 (2010).

Finally, although we appreciate the state's argument that it
has not, and will not, bring prosecutions against individuals or
businesses like Powell's Books, this stand down approach
cannot overcome the flaws in the statute. "The First Amend-
ment protects against the Government; it does not leave us at
the mercy of *noblesse oblige*." *Id.* at 1591. We may not
uphold the statutes merely because the state promises to treat
them as properly limited.

**[15]** In sum, we conclude that because sections 054 and
057 on their face reach a significant amount of material that
is not obscene as to minors, the statutes are unconstitutionally
overbroad.

**REVERSED**.